UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SODERBERG, by his mother
and next friend TRACY SODERBERG,

      Plaintiff,

v.

Case No. 07-14460
Honorable Patrick J. Duggan

BARBARA MCCULLUM, SARAH
DAVIDSON, SANDRA EDWARDS, and
STATE OF MICHIGAN,

      Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 29, 2008.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Plaintiff initiated this lawsuit against Defendants on October 19, 2007. In his complaint, Plaintiff alleges two counts under 42 U.S.C. § 1983 for violations of his First, Fifth, and Fourteenth Amendment rights under the United States Constitution (Counts I and II) and one count of gross negligence in violation of state law (Count III). Presently before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(6) and/or (c) of the Federal Rules of Civil Procedure. The motion has been fully briefed and this Court held a motion hearing on May 21, 2008. For the reasons that follow, Defendants' motion is granted.

**I.      Standard for Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and "determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bledsoe v. Community Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombley*, – U.S. – , 127 S. Ct 1955, 1974 (2007)). In other words, "[the] complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). "Under general pleading standards, the facts alleged in the complaint need not be detailed, although 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Bledsoe*, 501 F.3d at 502 (quoting *Twombley*, 127 S. Ct. at 1964-65).

**II.     Factual Background**[1]

Plaintiff, a minor child, was born on October 27, 1993. The events that form the basis of Plaintiff's lawsuit relate to complaints that his biological grandmother, Lynn

---

[1]The following facts are derived from Plaintiff's complaint.

Ladd ("Ladd"), made to Defendants concerning suspected abuse by John Hastie ("Hastie"), the boyfriend of Plaintiff's biological mother, Renee Ladd. At the time, Defendants Barbara McCullum, Sarah Davidson, and Sandra Edwards were employed by the State of Michigan as agents of the Wayne County Children Protective Services Division of the Wayne County Family Independent Agency ("Protective Services").

In his complaint, Plaintiff alleges that Ladd began calling Protective Services on January 6, 2001, to report that Hastie was abusing Plaintiff. At the time, Ladd reported that Plaintiff had severe bruising all over his body and that his arm had been broken twice in the preceding two months. Ladd continued to contact Protective Services over the next month, complaining of additional abuse by Hastie. Sarah Davidson ("Davidson") was the first case worker to investigate Ladd's reports. After Children's Hospital in Detroit reported "no abuse" following an abuse evaluation, Davidson closed Plaintiff's file.

On February 20, 2001, Ladd and her sister visited Protected Services to encourage the agency to reopen Plaintiff's file. Davidson was not present, but her supervisor Barbara McCullum ("McCullum") discussed the matter with Ladd and her sister. After seeing photographs of Plaintiff, McCullum agreed to reopen the file and referred Plaintiff to the University of Michigan Children's Hospital for a second abuse evaluation. According to Plaintiff, Sarah Edwards ("Edwards") then was assigned to Plaintiff's file.

Plaintiff alleges that on February 22, 2001, McCullum suggested to Renee Ladd (Plaintiff's mother) that she and Plaintiff move out of her mother's residence because her

3

mother "was causing more problems than solving any." McCullum allegedly offered to find emergency housing for Renee Ladd and Plaintiff.

On February 28, 2001, Ladd claimed that the Director at Plaintiff's daycare called her to report large bruising on Plaintiff's back two days earlier. Ladd immediately left a message conveying this information for Edwards and McCullum. On March 1, 2001, Ladd filed a police report with the Taylor Police Department. The following day, Ladd spoke with McCullum who indicated that Plaintiff's file was being closed because the University of Michigan report stated "no abuse." McCullum further indicated that the workers at Plaintiff's day care denied the recent report of abuse.

By this point in time, Renee Ladd had moved out of her mother's home with Plaintiff. On March 10, 2001, Hastie placed Plaintiff in a bathtub of scalding water, resulting in third degree burns over a large portion of Plaintiff's body. Plaintiff indicates that Hastie was charged and convicted for this offense and Renee Ladd's parental rights were revoked. Plaintiff was adopted by his aunt, Tracy Soderberg, and her husband.

### III. Defendants' Arguments and Plaintiff's Response

Defendants raise several arguments in support of their motion to dismiss. With respect to the State of Michigan, Defendants argue that Plaintiff's claims are barred by the Eleventh Amendment to the United States Constitution or Michigan's Governmental Immunity from Tort Liability Act, MICH. COMP. LAWS ANN. § 692.1407. With respect to Plaintiff's § 1983 claim, Defendants also argue that Plaintiff fails to state a claim upon

4

which relief may be granted because the State is not a person subject to liability under the statute. As to McCullum, Edwards, and Davidson, Defendants claim that Plaintiff's § 1983 claims fail because there is no constitutionally protected right to receive protective services and, alternatively, the individual defendants are entitled to qualified immunity. Defendants argue that Plaintiff's state law claim of gross negligence against McCullum, Edwards, and Davidson is barred by the Governmental Immunity from Tort Liability Act because their alleged misconduct was not "the" proximate cause of Plaintiff's injuries. Defendants alternatively argue that Plaintiff's state law claim is barred by the immunity provisions of Michigan's Child Protection Law, MICH. COMP. LAWS ANN. § 722.625.

At the motion hearing, Plaintiff's counsel conceded that Plaintiff's claims against the State of Michigan fail. Counsel further conceded that Plaintiff's gross negligence claim against McCullum, Edwards, and Davidson fail based on Michigan's Governmental Immunity from Tort Liability Act. As to his § 1983 claims against the individual Defendants, however, Plaintiff argues that they are liable because they "actively colluded with the abusive Mr. Hastie and his girlfriend [Renee Ladd] to keep him in contact with [Plaintiff] . . ." (Pl.'s Resp. Br. at 3.) Plaintiff maintains that the individual Defendants "affirmatively encouraged" Plaintiff's mother to leave Ladd's home with Plaintiff and Hastie. (*Id.*) Plaintiff maintains that Defendants therefore created a danger that led to Plaintiff's injuries. Plaintiff fails to indicate which provision(s) of the constitution he believes were violated by Defendants' conduct; however the cases on which Plaintiff

5

relies are premised on Fourteenth Amendment violations.

**IV.     Applicable Law and Analysis**

To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant was acting under color of state law and that the defendant's conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).  There is no dispute in this case that Edwards, McCullum, and Davidson (hereafter collectively "Defendants") were acting under color of state law when they engaged in the acts of which Plaintiff complains.  The question is whether their conduct violated Plaintiff's Fourteenth Amendment rights.  Further, Defendants maintain that they are entitled to qualified immunity.

This Court must employ a two-step test to determine whether Defendants are entitled to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001).  First, viewing the facts in the light most favorable to Plaintiff, the Court must determine whether a constitutional violation occurred.  *Id*. at 201, 121 S. Ct. at 2156.  Second, the Court must determine whether the violation involved a clearly established constitutional right.  *Id*.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted."  *Id*. at 202, 121 S. Ct. at 2156.  Stated differently, existing law must have put the defendant on notice that his conduct would be

clearly unlawful. *Id.*, 121 S. Ct. at 2156-57.

Plaintiff's § 1983 claim is premised on his assertion that he had a constitutional right to receive protection from the State against Hastie's abuse. This assertion is foreclosed by the United States Supreme Court's decision in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998 (1989). In that case, a four-year old child was beaten and permanently injured by his father, with whom he lived. County social workers received complaints that the boy was being abused by his father, but nevertheless did not remove the boy from his father's custody.

The Supreme Court held that the County's actions did not violate the Due Process Clause of the Fifth or Fourteenth Amendments.[2] The Court reasoned:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

489 U.S. at 195, 109 S. Ct. at 1003. As the *DeShaney* Court stated, the purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State

---

[2]While Plaintiff also asserts in his complaint that Defendants' conduct violated his First Amendment rights, he fails to respond to Defendants' argument that "[n]o case has been found where an alleged failure to protect a child from abuse or neglect by a family member or acquaintance has been found to be an actionable violation of . . . the [F]irst . . . [A]mendment[]." (Defs.' Br. in Supp. of Mot. to Dismiss at 2.)

7

protected them from each other." *Id*. at 196, 109 S. Ct. at 1003.

There are two exceptions to the *DeShaney* rule. *See Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir. 2005). As the *DeShaney* Court described the first exception:

> "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."

489 U.S. at 199-200, 109 S. Ct. at 1005. The second exception, referred to as the "State-created danger" exception, arises "where a State creates a perilous situation that renders citizens more vulnerable to danger at the hands of private actors." *Schroder*, 412 F.3d at 727-28. For the State-created danger exception to apply, the plaintiff must establish the following:

> (1) an affirmative act by the State that either created or increased the risk that the plaintiff would be exposed to private acts of violence . . .; (2) a special danger to the plaintiff created by state action, as distinguished from a risk that affects the public at large . . .; and (3) the requisite state culpability to establish a substantive due process violation.

*Id*. (internal quotation marks and citations omitted). The "requisite culpability" required in the third element is "'deliberate indifference' by the government entity when the entity 'had time to deliberate on what to do.'" *Id*. (quoting *Bukowski v. City of Akron*, 326 F.3d 702, 710 (6th Cir. 2003)).

Neither exception to the *DeShaney* rule applies in the present matter. Citing

8

*Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001), and *Schieber v. Philadelphia*, 156 F. Supp. 2d 451 (E.D. Pa. 2001), Plaintiff contends that the State-created danger exception applies because Defendants "affirmatively encouraged Renee [Ladd] to leave her mothers [sic] home with young Anthony and Mr. Hastie so the agency could be rid of Ms. Ladd's constant complaining." (Pl.'s Resp. Br. at 3-4.) Plaintiff asserts that Defendants "encouraged Renee [Ladd] to leave the safe confines of her mothers [sic] home and allow John Hastie to continue to see the child discreetly so as to prevent her mother from continuing to complain." (*Id*. at 4.)

As an initial matter, Plaintiff only alleges in his complaint that McCullum suggested to Renee Ladd that she move herself and Plaintiff out of Ladd's home and offered to find them emergency housing. (Compl. ¶¶ 25, 26.) Plaintiff does not allege in his complaint that any of the Defendants encouraged Renee Ladd to move in with Hastie or allow Hastie to continue to see Plaintiff.[3] In any event, even if these allegations were included in Plaintiff's complaint, they do not support the application of the State-created danger exception.

Defendants' alleged affirmative acts did not "create[] or increase[] the risk" that Plaintiff "would be exposed to private acts of violence." *Schroder*, 412 F.3d at 728. Hastie allegedly was abusing Plaintiff while Plaintiff was living with his mother in

---

[3]In his response, however, Plaintiff asks the Court to allow him to amend his complaint "so as to be consistent with this response." (Pl.'s Resp. Br. at 5.) As Plaintiff does not specify how he intends to amend the complaint, the Court assumes it would be to add these factual allegations and assert the State-created danger exception.

Ladd's home. Plaintiff's mother already was allowing Hastie to spend time with Plaintiff. There is nothing to suggest that Defendants created or increased the risk that Hastie would abuse Plaintiff by encouraging Renee Ladd to move with Plaintiff out of Ladd's home and into emergency housing, or even if Defendants told Renee Ladd (as Plaintiff claims) that Hastie could continue to see Plaintiff. The Court is not convinced otherwise by the two cases on which Plaintiff relies to support application of the State-created danger exception.

First, the Third Circuit overturned the district court's decision in *Schieber* on which Plaintiff relies. *See* 320 F.3d 409 (2003). Second, the facts in *Currier* are distinguishable from the present matter. In *Currier*, the social worker did not simply leave a child in the home of an abusive parent or where the abuse was occurring or fail to investigate allegations of abuse. Rather, as the Tenth Circuit took care to point out, its decision was premised on the fact that the social worker affirmatively caused the removal of the child from one parent's care to the custody of the abusive parent, who the social worker knew had previously abused the child. *Currier*, 242 F.3d at 919-920.

But even if this case falls within the state created danger exception to the *DeShaney* rule, the Court finds that Defendants are entitled to qualified immunity. Plaintiff fails to cite a single case that would have put Defendants on notice that their alleged conduct– which Plaintiff refers to as "collusion"– was unconstitutional.

For the above reasons, the Court concludes that Defendants had no constitutional

duty to protect Plaintiff from Hastie's abuse and their failure to do so does not constitute a violation of the Due Process Clause. Alternatively, the Court holds that Defendants are entitled to qualified immunity.

## V. Conclusion

Plaintiff concedes that his claims against the State of Michigan and his state law claims against McCullum, Edwards, and Davidson fail. For the above reasons, the Court also holds that Plaintiff's § 1983 claims against the individual Defendants also fail to state a claim upon which relief can be granted.

Accordingly,

**IT IS ORDERED**, that Defendants' motion to dismiss is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
James A. Brady, Esq.
Mark V. Schoen, Esq.